|  |  |
|---|---|
| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

| | |  |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:15-CR-129 (13) |
| | § | |
| BYRION DEMECO FERGUSON | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Byrion Demeco Ferguson's ("Ferguson") *pro se* Motion for Compassionate Release (#707), wherein he requests compassionate release on the basis of family circumstances. The Government filed a response in opposition to the motion (#711). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny Ferguson's motion for compassionate release. Having considered the pending motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.  Background

On October 12, 2016, a grand jury in the Eastern District of Texas returned an Indictment charging Ferguson in Count 1 with Conspiracy to Manufacture or Distribute or Possess with the Intent to Distribute 5 Kilograms or More of Cocaine, 280 Grams or More of Cocaine Base ("Crack"), or 100 Kilograms or More of Marijuana in violation of 21 U.S.C. § 846, from 2011 to 2016, and in Count 5 with Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 21 U.S.C. § 841(a). The court conducted a jury trial, commencing on November 7, 2016. On November 9, 2016, the jury returned a verdict finding Ferguson guilty of Count 1, but not guilty of Count 5. On March 30, 2017, the court sentenced Ferguson to 168 months' imprisonment, followed by a 5-year term of supervised release. The court ordered that his

sentence run consecutively to any future sentence imposed in the following cases: Driving on a Suspended License (Docket No. TR12-1710), Columbia County, AR; Failure to Appear (Docket No. CR-12-852), Columbia County, AR; Hot Check, Less than $1,000 (Docket No. HTC-15-4839), Garland County, AR; Driving on a Suspended License (Docket No. HTC-15-6273), Garland County, AR; Theft of Property, Less than $1,000 (Docket No. HTC-15-6972), Garland County, AR; Ct. 1 - Driving on a Suspended License, Ct. 2 - Fictitious Tags, Ct. 3 - No Liability insurance (Docket No. HTC-15-4616), Garland County, AR. Ferguson's conviction and sentence were affirmed on appeal by the United States Court of Appeals for the Fifth Circuit on May 4, 2018. Ferguson is currently housed at Federal Correctional Institution Forrest City Low, located in Forrest City, Arkansas. His projected release date is September 30, 2027.

II.   Compassionate Release

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a

> determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, ___ U.S. ___, No. 20-5997, 2020 WL 7132458 (Dec. 7, 2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a

defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court. Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

In this instance, Ferguson appears to have exhausted his administrative remedies. On October 16, 2020, Ferguson submitted a request for compassionate release to the warden of the facility where he is housed. According to Probation's investigation, no response has been received from the warden. Although Ferguson may have complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to modify his term of imprisonment to release him from confinement.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing

modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C. § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

A.  Family Circumstances

Although the USSG acknowledges that extraordinary and compelling reasons may exist with respect to a defendant's family circumstances, it specifies the following qualifying conditions: (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children"

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

or (ii) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C)(i)-(ii).

Ferguson has one biological son, Da'Quarion, with LaShonda Howell ("Howell"), who is now age 6. At the time Ferguson's Presentence Investigation Report ("PSR") was prepared in 2017, Da'Quarion was in child welfare custody due to Ferguson's incarceration and Howell's commitment to a mental hospital. On April 11, 2018, Da'Quarion was legally adopted by Ferguson's mother, Anita Phillips ("Mrs. Phillips"), and stepfather, Billy Ray Phillips ("Mr. Phillips"), pursuant to a decree of adoption entered by the Circuit Court of Garland County, Arkansas. Mrs. Phillips recently passed away, and, as a result, Ferguson claims that Mr. Phillips is having a difficult time raising Da'Quarion due to his age of 68 and his alleged poor health. Ferguson seeks compassionate release so that he may help Mr. Phillips raise Da'Quarion.

While the court recognizes the challenges Mr. Phillips faces, Ferguson cannot claim that he is the only available caregiver for Da'Quarion. *See United States v. Jackson,* No. CR 6:17-73-HMH, 2020 WL 6110998, at *2 (D.S.C. Oct. 16, 2020) (denying compassionate release for family circumstances where the caregiver of the defendant's minor children passed away but the children were being cared for by a relative); *see also United States v. Watson*, No. 6:16-CR-06118 EAW, 2020 WL 6049710, at *2 (W.D.N.Y. Oct. 13, 2020) ("While the Court does not doubt that Defendant's incarceration is difficult for his family, and likely even more difficult during this pandemic, the situation described by Defendant [and his mother] does not rise to the level of 'extraordinary and compelling' circumstances so as to justify a sentence reduction."). As an initial matter, it is Mr. Phillips—not Ferguson—who is Da'Quarion's parent.

6

When an adoption is finalized in the State of Arkansas, it serves to "relieve the biological parents of the adopted individual of all parental rights and responsibilities, and to terminate all legal relationships between the adopted individual and his . . . biological relatives, including his . . . biological parents, so that the adopted individual thereafter is a stranger to his . . . former relatives for all purposes." ARK. CODE § 9-9-215(a)(1). Moreover, the adoption decree explicitly states that "[i]t is in the best interest of [Da'Quarion] to have no contact with [his] birth relatives." The adoption decree further declares:

> [T]he return of [Da'Quarion] to the care or supervision of any person from whom custody was removed or any person the court has specifically ordered to not have care, supervision, or custody of the child[] by [Mr. and Mrs. Phillips] without prior court order may result in a finding of contempt, a true finding of child maltreatment, a finding or dependency-neglect[,] and/or criminal prosecution.

Hence, it appears that Ferguson has no legal right to obtain custody of Da'Quarion or to provide care for or supervise him. At a minimum, there is no guarantee that Ferguson—as opposed to Mr. Phillips or any other caregiver—would gain custody of Da'Quarion even if he were to be released from prison. *See United States v. Reeves*, No. 3:18-CR-0313-B-2, 2020 WL 5094825, at *3 (N.D. Tex. Aug. 28, 2020) (finding that the defendant was not the only available caregiver where the defendant's child was placed with family members, the process for the child's long-term placement with another family had begun, and "there [was] no guarantee" that the child would be placed with the defendant if he were to get out of prison).

Additionally, as Da'Quarion's parent, Mr. Phillips is legally responsible for Da'Quarion's care. *See* ARK. CODE § 9-9-215(a)(2) (stating that adoption has the effect of "creat[ing] the relationship of parent and child between petitioner and the adopted individual"). Indeed, even if Mr. Phillips becomes unable to take care of Da'Quarion, in view of the Arkansas court's

7

declaration that it was in the child's best interest not to have contact with Ferguson, it is likely that Da'Quarion would be placed with one of Ferguson's other family members. *See United States v. Johnson*, No. 1:15-CR-00059-NONE, 2020 WL 6075867, at *5 (E.D. Cal. Oct. 15, 2020) (holding that, although the defendant's child may be in juvenile dependency proceedings due to the unfitness of the other parent, compassionate release was not warranted because the defendant "failed to establish that he is likely to be found a 'suitable caretaker' for his child by the governing authorities" (quoting *United States v. Paul*, No. 3:18-cr-00227, 2020 WL 5807343 (S.D. W.Va. Sept. 25, 2020))). According to his PSR, Ferguson has a father who lives in Texas, a sister who lives in Hot Springs, Arkansas, and a brother who lives in Miami, Florida. Ferguson also has two stepsiblings with whom he says he has a good relationship. *See United States v. Crandle*, No. 10-35, 2020 WL 2188865, at *4 (M.D. La. May 6, 2020) (denying request for relief and noting that "the court has before it no information as to why other relatives cannot care for [the defendant's] parents"). Therefore, Ferguson appears to lack legal standing and, in any event, fails to meet the requirements for family circumstances that establish extraordinary and compelling reasons for early release from prison.

      B.    <u>"Other" Reasons</u>

Ferguson's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that

courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Ferguson for any reason. In exercising its discretion, the court, likewise, finds that no extraordinary and compelling reasons exist in relation to Ferguson's situation. Although Ferguson provides the court with a list of courses and programs he has completed, he has not presented any "other reasons" establishing extraordinary and compelling reasons warranting compassionate release. *See United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing

rehabilitation alone."); *cf. United States v. Whitehead*, 986 F.3d 547, 551 (5th Cir. 2021) (upholding the denial of a sentence reduction from a life sentence and finding that the court may, but is not required, to consider a defendant's post-conviction rehabilitative efforts when evaluating a motion for reduction under § 404 of the First Step Act). Thus, Ferguson has not presented any "other reasons" that satisfy the requirements of the First Step Act regarding compassionate release.

  C. <u>Section 3553(a) Factors</u>

The court further finds that compassionate release is not merited in light of the applicable factors set forth in § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Thompson*, 984 F.3d 431, 435 n.11 (5th Cir. 2021) (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). Ferguson's offense of conviction stems from his participation in a drug-trafficking organization based in Plano, Texas, which was a major supplier of crack cocaine, powder cocaine, hydrocodone, and marijuana in North Texas. Agents used surveillance, confidential sources, and undercover officers conducting drug buys to determine the participants in the drug conspiracy. The agents identified Ferguson and at least six others as being distributors for the conspiracy. Ferguson distributed cocaine base on behalf of a codefendant at two houses the codefendant rented in Plano. Ferguson managed a stash house on behalf of the drug trafficking organization at one of the residences.

On February 26, 2013, the Plano Police Department used a confidential source ("CS") to conduct a controlled purchase of 2 grams of crack cocaine. The CS walked to the stash house, where Ferguson was waiting, who let the CS inside and distributed approximately 2 grams of

crack cocaine to the CS. According to evidence obtained during undercover drug transactions, wire intercepts, and codefendant testimony, Ferguson was responsible for distributing a total of 561.6 grams of crack cocaine. Ferguson sold crack cocaine, as well as marijuana and unspecified pills, on behalf of the drug trafficking organization from 2008 to 2013.

Ferguson also has an extensive criminal history, including prior convictions for theft (2), aggravated robbery, felony escape, obstruction of governmental operations, unauthorized use of a motor vehicle, and driving with a suspended license. Ferguson's conviction for aggravated robbery arose from his attempted robbery of a pawn shop in which he held the store clerk at gunpoint. Further, Ferguson has a lengthy history of substance abuse, using marijuana since he was 16 and powder cocaine, crack cocaine, and ecstasy from age 30. In view of the nature and circumstances of his offense of conviction, his extensive criminal history, and his long history of substance abuse, the court cannot conclude that Ferguson would not pose a danger to any other person or to the community, if released from prison at this time.

In addition, granting Ferguson compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the United States Court of Appeals for the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence. *Id.* at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the

defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Chambliss*, 948 F.3d at 693-94; *see Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"). In the instant case, releasing Ferguson after he has served only 44% of his 168-month sentence would similarly minimize the impact of his crime and the seriousness of his offense.

IV.     Conclusion

Consistent with the foregoing analysis, Ferguson's *pro se* Motion for Compassionate Release (#707) is DENIED.

SIGNED at Beaumont, Texas, this 3rd day of March, 2021.

*Marcia A. Crone*
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE